IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSIAH CLARK,

                Plaintiff,

      v.

COOK COUNTY SHERIFF'S OFFICE;
CORRECTIONAL OFFICER PERRY;
DEFENDANT DART IN HIS
OFFICIAL CAPACITY; and COOK
COUNTY, ILLINOIS,

                Defendants.

Case No. 19 C 7131
Consolidated with
Case No. 21 C 3093

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion to Dismiss. The Court denies Defendants' Motion to Dismiss Counts I, II, and IV. The Court grants Defendants' Motion to Dismiss Count III.

## I.   BACKGROUND

This case arises out of 42 U.S.C. § 1983 claims as well as claims of tort liability for willful and wanton conduct while Plaintiff Josiah Clark was a pre-trial detainee at Cook County Jail. Cook County Jail is operated and maintained by the Cook County Sheriff's Office. (Dkt. No. 59, Fourth Am. Compl. ("Compl.") ¶ 1.) The Complaint alleges the following facts.

On June 9, 2019, at approximately 12:12 am, while Plaintiff was asleep, detainee Jacorey Barksdale ("Barksdale") removed a wheelchair arm from another detainee's wheelchair and placed the arm in his bunk. Approximately 16 minutes after removing the arm, detainee Barksdale retrieved the weapon from his bunk, walked to Plaintiff's bed, and struck Plaintiff at least four times in the head with the wheelchair arm. (*Id.* ¶¶ 9–16.) Plaintiff was severely injured by the attack and hospitalized, where he remained unconscious for a prolonged period of time. (*Id.* ¶¶ 17–20.) Plaintiff still suffers from the traumatic brain injury, which has required several medical procedures. (*Id.*)

The actions of Barksdale that night were recorded by and observable on the tier video camera. (*Id.* ¶ 21.) At the time of the attack, Barksdale had already committed at least 7 acts of violence while in custody, including attacks on detainees without cause. (*Id.* ¶ 22.) Less than 24 hours before detainee Barksdale attacked Plaintiff, Barksdale threatened a guard and told him that "in the world, I would have killed you." (*Id.* ¶ 23.) Plaintiff believes that detainee Barksdale should have been confined to a personal cell as opposed to a multi-inmate tier, given his prior history of violence and the threat he made to the guard 24 hours prior to the attack. (*Id.*) Defendant Perry was the correctional

officer assigned to the tier that night to monitor and protect the detainees, including Plaintiff and Barksdale. (*Id.* ¶ 24.)

In July 2017, approximately two years before the attack on Plaintiff, two detainees at the Cook County Jail removed wheelchair arms and used the parts as weapons in an attack on a third detainee resulting in his hospitalization. The risk of the use of wheelchair arms as makeshift weapons in the correctional setting is "well-known and well-documented," and there exist tamper-proof wheelchairs designed for the correctional setting. (*Id.* ¶¶ 45, 48.) Defendant Thomas Dart, the Sheriff of Cook County, has final policy-making authority and is responsible for the "training, supervision, and discipline of Cook County Sheriff's Office." (*Id.* ¶ 3.)

On September 27, 2022, Plaintiff Josiah Clark filed a four-count Fourth Amended Complaint (Dkt. No. 59), against the Cook County Sheriff's Office, Officer Perry, Sherriff Dart in his official capacity, and Cook County itself, alleging violations of Plaintiff's constitutional rights and state law claims that occurred as a result of his injury. Plaintiff's Complaint sets out four counts: failure to protect under 42 U.S.C. § 1983 against Officer Perry (Count I); a claim based on *Monell v. Department of Social Servs.,* 436 U.S. 658 (1978) against Defendant Dart under 42 U.S.C. § 1983 (Count II); a tort claim of willful and wanton

conduct under Illinois state law against the Cook County Sheriff's Office (Count III); and a claim for Cook County's indemnification under Illinois state law (Count IV).

This matter was initially filed by Plaintiff *pro se* on October 30, 2019. (Dkt. No. 1.) In the following years, Plaintiff filed five more complaints *pro se* under two distinct case numbers, which were eventually consolidated. The lawsuit was dismissed because Plaintiff failed to file a Third Amended Complaint after his Second Amended Complaint was dismissed without prejudice. (Dkt. No. 20.) On September 9, 2021, Plaintiff, through newly retained counsel, filed a motion pursuant to Federal Rule of Civil Procedure 60 for relief from judgment (Dkt. No. 24), which this Court granted, vacating the dismissal order (Dkt. No. 27). Plaintiff then filed his Third Amended Complaint (Dkt. No. 29) on February 28, 2022, and his Fourth Amended Complaint (Dkt. No. 59) on September 27, 2022. Before the Court is Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 60.)

## II.   <u>LEGAL STANDARD</u>

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732,

736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Under the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). When determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago,* 817 F.3d 561, 564 (7th Cir. 2016). Furthermore, "a complaint should be dismissed for failure to state a claim only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Dewal v. Carter,* 224 F.3d 607, 612 (7th Cir. 2000) (internal quotations omitted).

### III.  <u>DISCUSSION</u>

#### A.  **Count I – Failure to Protect**

In Count I, Plaintiff brings a failure to protect claim against Defendant Perry under 42 U.S.C. § 1983. To state a claim

under 42 U.S.C. § 1983, a plaintiff must allege he or she was (1) deprived of a federal right, privilege, or immunity, (2) by any person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 638 (1980) (citing 42 U.S.C. § 1983). Defendants do not challenge whether Plaintiff adequately alleged that each defendant acted under the color of state law. At issue instead is whether Plaintiff sufficiently alleged a deprivation of a federal right—in particular, violations of his due process rights.

Jail officials have a duty to "take reasonable measures to guarantee the safety of the inmates," including protecting inmates from violence at the hands of other inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832–33 (1994). However, a constitutional violation does not take place "every time an inmate gets attacked by another inmate." *Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008).

Because Plaintiff was a pretrial detainee at the time of the alleged constitutional deprivation, the Fourteenth Amendment's Due Process Clause governs his failure-to-protect claim as opposed to the Eighth Amendment's bar on cruel and unusual punishment. *Kemp v. Fulton County,* 27 F.4th 491, 495–96 (7th Cir. 2022). A plaintiff bringing a failure-to-protect claim under either the Eighth or Fourteenth Amendment traditionally had to allege that a defendant was subjectively aware of a substantial risk of serious harm to the plaintiff. *Id.* at 495–96. However, the Seventh Circuit in *Kemp*

ruled that pretrial detainees who bring a failure-to-protect claim under the Fourteenth Amendment are no longer held to the subjective awareness pleading standard and instead need only to plead objective unreasonableness. *Id.* at 495. In order to state a claim, a pretrial detainee must allege: (1) defendants "made an intentional decision regarding the conditions of the plaintiff's confinement;" (2) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendants "did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved," and the consequences of inaction would have been "obvious;" and (4) the defendants' inaction caused the plaintiff's injuries. *Id.* at 496 (adopting the analysis from *Castro v. County of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). As to the second requirement, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz,* 398 F.3d 904, 911 (7th Cir. 2005). To put the third requirement more succinctly, plaintiff is required to show that defendant's conduct is "objectively unreasonable," though this must be more than negligence. *Kemp,* 27 F.4th at 498.

Plaintiff's allegations are brought under the following theory: (1) Defendant Perry made an intentional decision not to

intervene to save Plaintiff from detainee Barksdale when he was assigned to monitor the tier where both Plaintiff and detainee Barksdale were housed; (2) Detainee Barksdale had a history of violence and, armed with a wheelchair arm, posed a substantial risk of harm to other inmates, including to Plaintiff; (3) Defendant Perry did nothing to abate the risk detainee Barksdale posed; (4) Defendant Perry's inaction allowed detainee Barksdale to attack violently Plaintiff in his sleep causing severe injuries.

These allegations state a viable failure-to-protect claim. Plaintiff sufficiently alleges an intentional decision that Defendant Perry took regarding Plaintiff's confinement—namely, that Defendant Perry failed to intervene or prevent an attack on Plaintiff. Plaintiff also adequately alleges that Defendant Perry's inaction caused Plaintiff's injuries. The bulk of the parties' briefs focus on the second and third prongs of the test as outlined in *Kemp,* which the Court addresses below.

Plaintiff's Complaint adequately alleges that Barksdale posed a substantial risk of harm to Plaintiff. An inmate assailant's prior history of violence informs whether a substantial risk of harm existed for purposes of a failure-to-protect claim. *See Santiago v. Walls,* 599 F.3d 749, 758–59 (7th Cir. 2010) (finding substantial risk of harm where assailant inmates, due to behavioral history, "posed a significant risk of confrontation and

- 8 -

violence"); *Brown v. Budz,* 398 F.3d at 911 (substantial risk where detainee had known history and propensity of violently attacking Caucasians). Plaintiff's Complaint alleges that Barksdale had committed at least 7 acts of violence while in custody prior to his attack on Plaintiff, including attacks on other detainees without cause. (Compl. ¶ 22.) At this early stage of the proceeding, the Court will draw all reasonable inferences in Plaintiff's favor and "hypothesize any set of facts that could be proved consistent with the allegations" to avoid dismissal. *Brown,* 398 F.3d at 908-09. A court could reasonably hypothesize a set of facts about Barksdale's history of violence that rendered him a substantial risk to vulnerable inmates like Plaintiff while asleep. Perhaps Barksdale violently attacked sleeping or otherwise vulnerable inmates with wheelchair arms or other makeshift weapons several times that month or even that week. This will be Plaintiff's burden to prove in discovery, not at the motion to dismiss stage. Further, the Court does not agree with Defendants that Plaintiff, having had the benefit of some written discovery, should be foreclosed from further discovery. (*See* Dkt. No. 67, Defs. Reply ("Reply") at 5.)

Defendants assert this Court should not account for Barksdale's violent history because under this line of reasoning, "it would permit any detainee to claim that his constitutional

rights were violated simply because he got into an altercation with any other detainee who had at least one fight in jail." (Reply at 4.) This argument is unsupported by the weight of case law outlined above, as courts routinely account for the assailant's history of violence in failure-to-protect claims. Plaintiff has also pled facts significantly more severe than just "one fight in jail."

Defendants also contend that Barksdale posed only a "general" risk of violence because Plaintiff did not assert any prior altercations between Barksdale and him. (Dkt. No. 60, Motion to Dismiss ("Mot.") at 7–8.) It is true that a failure-to-protect claim cannot be predicated merely on general risks of violence in a detention facility, given "prisons are inherently dangerous." *See Brown,* 398 F.3d at 913; *Wilson v. Ryker,* 451 F.App'x 588, 589 (7th Cir. 2011). It is, however, well-established that "a risk is not rendered general merely because it is not personal to plaintiff." *Id*; *see also Farmer v. Brennan,* 511 U.S. 825, 843 (1994) ("[I]t does not matter [] whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk").

As for the third prong of the test under *Kemp,* Plaintiff alleges it was unreasonable and reckless of Defendant Perry to fail to (1) remove the weapon from Barksdale's possession; (2)

- 10 -

take possession of the weapon from Barksdale's bunk; or (3) protect the other detainees in the tier, including Plaintiff, from an attack by Barksdale. (Compl. ¶ 25.) Plaintiff alleges Defendant Perry's failure to protect Plaintiff resulted in severe injuries and argues that this failure constituted reckless disregard of the risk that Barksdale would attack an inmate with the wheelchair arm. (*Id*. ¶¶ 26-27.) Though Defendants seem to rely on the correct objective reasonableness standard under *Kemp* in their reply brief, their Motion to Dismiss did not. There, Defendants incorrectly assert that Plaintiff failed to plead that Defendant Perry had "actual knowledge of a specific threat" to Plaintiff's safety, or personal reason to know Barksdale posed a danger. (Mot. at 5.) But the Seventh Circuit in *Kemp* abrogated the subjective knowledge standard in failure-to-protect claims brought by pretrial detainees under the Fourteenth Amendment such as this one. *Kemp,* 27 F.4th at 495-96. Though mere negligence is still not enough post-*Kemp,* pretrial detainees now only need to allege that the defendant-official recklessly disregarded the substantial risk of harm in plaintiff's environment, as opposed to subjective awareness of the risk. *Id*. at 498.

The Court can hypothesize a set of facts consistent with the Complaint where Barksdale, because of his history of violence, posed a risk to inmates like Plaintiff so apparent and obvious

that Defendant Perry knew or should have known about it. *Farmer,* 511 U.S. at 842-43 ("a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious") (internal quotations omitted); *see also Phillips v. Edgeton,* 1995 WL 703737 (7th Cir. 1995) ("circumstantial evidence of an obvious risk of harm may be sufficient to infer that officials possessed actual awareness.") If evidence suggests the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and if circumstances suggest that defendant-official was exposed to such information, a trier of fact may infer actual knowledge of the risk. *Farmer,* 511 U.S. at 842. Perhaps Barksdale's prior attacks were detailed in his disciplinary records and Defendant Perry had a responsibility to review the records.

In light of this risk, Defendant Perry's failure to monitor adequately the security footage or intervene in light of what he may have seen on the footage may surpass negligence. In *Dale v. Poston,* the Seventh Circuit held that if prison officials "know that there is a cobra [in the cell] [*sic*] or at least that there is a high probability of cobra there, and do nothing, that is deliberate indifference." *Dale,* 548 F.3d at 569. Here, discovery will clarify whether Barksdale was in fact a great risk or a "cobra

lurking in the grass," or whether the threat Barksdale posed was too vague to alert officers of the danger. *Id.*

Defendants argue Plaintiff never alleged to have reported to an officer that Barksdale posed a risk, filed a grievance, or had prior conflicts with Barksdale, and thus Defendant Perry had no reason to know of Barksdale's risk. (Reply at 5.) But the Seventh Circuit has rejected the suggestion that any threatened detainee must "advise his custodians of a pending threat," or that a custodial officer need "know in advance the identity of the particular plaintiff at risk." *Brown,* 398 F.3d at 915. Barksdale could have been a "cobra," sufficient to put Defendant Perry on notice of the risk he presented, even if Plaintiff did not have prior altercations with or raise any concerns about him. (*See* Mot. at 8.) In fact, Plaintiff himself need not have been aware of the impending attack, as the Seventh Circuit has found that a substantial risk existed "even when potential and ultimate victims had been wholly oblivious to the impending threat." *See Brown,* 398 F.3d at 912. The two cases Defendants cite here do not support their argument, primarily because both were at the summary judgment stage — a posture where the Court assesses Plaintiff's evidence as opposed to Plaintiff's allegations and does not draw reasonable inferences in favor of the Plaintiff. *Vesey v. Owens,* 2015 WL

3666730, at *8 (N.D. Ill. June 12, 2015); *Thompson v. Medreno,* 2020 WL 4819266 (N.D. Ill. Aug. 17, 2020). (Mot. at 7–8.)

Finally, Defendants are incorrect that Plaintiff failed to plead Defendant Perry's "personal involvement" in the alleged constitutional violation, since Plaintiff pled that Defendant Perry was assigned to monitor the tier in which Plaintiff and Barksdale were housed on the night of the attack. (Compl. ¶ 24.) Further, at this early pleading stage, Plaintiff does not need to "provide evidence indicating what particular remedies were or were not within each official's power." *Boclair v. Godinez,* 2017 WL 1427069 at 8* (N.D. Ill. Apr. 21, 2017). As such, Plaintiff is not required to allege that Defendant Perry "played any role in the housing assignments of detainees" as Defendant suggests. (Mot. at 7.) Accordingly, the Court denies Defendants' Motion to Dismiss Count I.

### B.  Count II – Monell Claim

In Count II, Plaintiff alleges a Fourteenth Amendment claim under *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658 (1978), against Officer Dart in his official capacity as Cook County Sheriff. Section 1983 creates a private right of action against any "person" who violates plaintiff's federal rights while acting under the color of state law, and *Monell* held that a municipality is a "person" within the meaning of the

section. 42 U.S.C. § 1983; *Id.* at 658. An official capacity claim is the same as a claim against the municipality itself. *See Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

*Monell* liability is "rare and difficult to establish." *Stockton v. Milwaukee County,* 44 F.4th 605, 617 (7th Cir. 2022). This heightened evidentiary burden does not, however, suggest federal courts may apply a heightened pleading standard more stringent than that of Rule 8(a) of the Federal Rules of Civil Procedure. *White v. City of Chicago,* 829 F.3d 837, 844 (7th Cir. 2016).

In order to prevail on a *Monell* claim, Plaintiffs must prove that the constitutional violation was caused by a governmental "policy or custom." *Monell,* 436 U.S. at 694. The Seventh Circuit has interpreted this language to include three types of actions that may support municipal liability under Section 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic,* 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted). The municipality's failure to make a policy is also actionable in situations where rules or regulations are required to remedy a

potentially dangerous practice. *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010). Plaintiffs seeking to impose municipal liability on a theory of municipal *inaction* must typically point to evidence of a "prior pattern of similar constitutional violations." *J.K.J. v. Polk County,* 960 F.3d 367, 380 (7th Cir. 2020). Inaction may take the form of a "gap in express policy." *Orozco v. Dart,* 64 F.4th 806, 824 (7th Cir. 2023); *see also Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005). To demonstrate that the County is liable under *Monell,* the plaintiff must show that County policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chi.,* 296 F.3d 531, 537 (7th Cir. 2002). Finally, the plaintiff must also show a "direct causal link" between the challenged action and violation of his constitutional rights. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago,* 988 F.3d 978, 987 (7th Cir. 2021). *See Bd. Of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997) (municipality's action must be the "moving force" behind the federal rights violation).

A *Monell* claim requires an underlying constitutional violation. Because Count I may serve as the underlying constitutional violation, the Court assesses Plaintiff's *Monell* claim, which is as follows: Defendant Dart, as Cook County Sheriff, was responsible for all final policymaking regarding the

- 16 -

office's polices, practices, and customs. (Compl. ¶ 49.) In this official capacity as Cook County Sheriff, Defendant Dart failed to implement a policy that would have prevented inmates from using wheelchair parts as makeshift weapons. As a result, Barksdale was able violently to attack Plaintiff, causing severe injuries.

Plaintiff alleges the risk of wheelchairs used as makeshift weapons is "well-known and well-documented." (Compl. ¶ 45.) He also alleges there was at least one other instance of misconduct resulting from this alleged "gap in policy" — in July 2017, two detainees in Cook County Jail injured a third inmate using a removed wheelchair arm. (*Id.* ¶¶ 45-46.) While this basis alone would not be enough proof of prior misconduct to pass muster at summary judgment, it survives motion to dismiss. The Seventh Circuit has held that plaintiffs may adequately plead a *Monell* claim based solely on their own experiences, even though Plaintiff must ultimately offer evidence of a pattern of misconduct. *White,* 829 F.3d at 843-44. At this early stage of pleading, the concern is not what Plaintiff did or did not show, but rather what plaintiff did or did not allege.

Though Plaintiff did not plead that Defendant Dart personally knew of the risk wheelchairs posed or of the prior incidents involving wheelchairs as weapons, a fact finder may conclude that a prison official knew of a substantial risk from the very fact

- 17 -

that the risk was obvious. *Farmer,* 511 U.S. at 842-43, *supra*. Here, the risk wheelchairs posed could have been so obvious that Defendant Dart knew or should have known of their risk, and yet failed to take appropriate steps by mandating tamper-proof wheelchairs or otherwise.

The Court does not agree with Defendants that the "glaring deficiency" of Plaintiff's *Monell* claim is causation. Defendants state that Barksdale's assault was the "sole cause" of Plaintiff's injuries, and "not wheelchairs or any policy of the Sheriff." (Mot. at 10, Reply at 6-7). It is true that Barksdale was one direct cause, but so was the removability of the wheelchair arm. It is entirely plausible that Barksdale felt emboldened enough to attack the Plaintiff only because he was armed. Further, Courts assess causation under *Monell* as proximate cause. *Ovadal v. City of Madison, Wisconsin,* 416 F.3d 531, 535 (7th Cir. 2005). It is "reasonably foreseeable" that a municipality's failure to address a substantial risk of wheelchairs used as makeshift weapons would cause the injury at issue. *Suzik v. Sea-Land Corp.,* 89 F.3d 345, 348 (7th Cir. 1996). For these reasons, Plaintiff has plausibly alleged that access to the wheelchair arm was at least one of several causes of his injuries and a "moving force" behind Plaintiff's injuries.

Finally, the Court does not find it dispositive at this stage that Cook County Jail maintains a policy prohibiting aggravated battery. (Mot. at 10, Reply at 7.) The existence of one policy does not necessarily foreclose *Monell* liability for a gap that exists in a wholly separate policy. Discovery will clarify whether this battery policy was a sufficient precautionary measure precluding a finding of Defendant's deliberate indifference towards the risk.

For the reasons above, the Court denies Defendants' Motion to Dismiss Count II.

### C. Count III — Willful and Wanton Conduct

Through Count III, Plaintiff brings a state law claim of wanton and willful conduct against Cook County Sheriff's Office, through its employees, for failing to supervise inmates, maintain a correctional presence, prevent the attack, prohibit wheelchairs that can be dismantled, violating correctional facility and legal standards, and being "otherwise willful and wanton." (Compl. ¶ 54.)

"There is no separate and independent tort of 'willful and wanton conduct.'" *Ziarko v. Soo Line R.R. Co.,* 161 Ill.2d 267, 274 (1994). Instead, it is considered an aggravated form of negligence. *Sparks v. Starks,* 367 Ill.App.3d 834, 837 (2006). Defendants move to dismiss this claim on the grounds that § 4-103 of the of the

Illinois Tort Immunity Act forecloses relief by providing immunity for public employees for the conduct alleged in Plaintiff's Complaint. It is undisputed that Cook County employees are public employees. Section 4-103 of the of the Tort Immunity Act provides that:

> "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient *equipment, personnel, supervision or facilities therein.* Nothing in this section requires the periodic inspection of prisoners." 745 ILCS 10 §4-103 (emphasis added.)

Plaintiffs point to § 2-202 of the Tort Immunity Act, which carves an exception to immunity for willful and wanton conduct. However, Illinois courts have held that § 4-103 does not incorporate the willful and wanton exception under § 2-202 and instead provides absolute immunity. *Payne for Hicks v. Churchich,* 161 F.3d 1030, 1044 (7th Cir.1998). Further, Illinois courts have applied exceptions to immunity only where the Tort Immunity Act expressly provides for exceptions for willful and wanton conduct, and Section 4-103 does not. *Kocian v. Unknown Chicago Police Officers,* 2001 WL 30509, at *3 (N.D. Ill. Jan. 11, 2001).

Thus, this Court agrees with Defendants that Illinois Tort Immunity Act 10 § 4-103 forecloses Plaintiff's "willful and wanton" negligence claim, as Plaintiff's allegations fall under actions

enumerated by the statute. Plaintiff even concedes that § 4-103 "does apply to much of Plaintiff's state law claim against Defendant Sheriff's Office," and that it "provides Defendants immunity for the attack on Plaintiff by Barksdale." (Dkt. No. 66 at 12.)

The Court is unpersuaded by Plaintiff's remaining argument that a public employee's provision of equipment such as the wheelchair is not covered by the language in § 4-103 because it is brought into a jail by a hospital and did not originate at the jail. (*Id.*) The wheelchair arm at issue here is equipment provided by the jail for these purposes. The natural extension of Plaintiff's reading of § 4-103 to grant immunity only for failure to provide equipment originating at the jail, instead of all equipment made available by the jail, would preclude the statute's application to nearly all jail equipment. The Court is equally unpersuaded that *Valentino v. Vill. of S. Chicago Heights,* 575 F.3d 664, 679 (7th Cir. 2009) is relevant here. The Court's obligation to construe strictly the Tort Immunity Act against public entities does not require the Court to read § 4-103 in an implausible way. Because the Court finds that § 4-103 precludes Plaintiff's claim, the Court does not find it necessary to address whether the claim relates back to Plaintiff's original pleading.

Accordingly, the Court grants Defendants' Motion to Dismiss Count III.

### D.  Count IV – Indemnification

Count IV is a state-law statutory indemnification claim against Cook County under the Illinois Tort Immunity Act, ILCS 10/0\9-102. Under § 9-102, "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which it or an employee while acting within the scope of his employment is liable". 745 ILCS 10/9-102; *see also Cates v. Manning,* 2020 WL 1863299, at *3 (N.D. Ill. Apr. 14, 2020) ("[Section] 1983 plaintiffs routinely assert section 9-102 indemnification claims against municipalities simultaneously with the underlying claims against the individual officers who may have harmed them."). A municipality may be required under the Illinois Tort Immunity Act to indemnify its employees for damages resulting from Section 1983 violations. *See Wilson v. City of Chicago,* 120 F.3d 681, 683-85 (7th Cir. 1997). Defendants have offered no reason to dismiss this claim other than by arguing for the dismissal of the rest of the underlying claims.

Accordingly, the Court denies Defendants' Motion to Dismiss with respect to Count IV.

### IV.  <u>CONCLUSION</u>

- 22 -

For the reasons stated herein, the Court denies Defendants' Motion to Dismiss as to Counts I, II, and IV. Count III is dismissed with prejudice.

**IT IS SO ORDERED.**


_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 6/20/2023