IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Josiah Clark, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 7131 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| Cook County Sheriff's Office, Correctional ) | |
| Officer Perry, Sheriff Dart in his official ) | |
| capacity, and Cook County, Illinois, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Josiah Clark was injured after being attacked by another detainee in the Cook County Jail. At this stage, the claims in this case are as follows: a failure to protect claim against Officer Perry, a *Monell* claim against Sheriff Dart, and an indemnification claim against Cook County. Defendants move for summary judgment on these claims. For the reasons that follow, the motion for summary judgment is granted.

**Legal Standard**

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. *Spurling*, 739 F.3d at 1060.

**Background**

On June 8, 2019, Josiah Clark and Jacorey Barksdale were housed as pretrial detainees in Tier 3F at the Cook County Jail. R. 118 ¶ 6. Prior to June 8, Clark and Barksdale had never interacted. *Id.* ¶ 7. But that evening, before 10:00 PM, Clark overheard Barksdale criticizing "handicapped people," and Clark confronted Barksdale regarding Barksdale's comments. *Id.* ¶ 8. Though Clark and Barksdale had a verbal altercation, the altercation did not escalate to physical violence, and when an unknown correctional officer asked, "y'all cool," Clark responded, "yeah, we all cool." *Id.* ¶¶ 9–10. In his deposition, Clark testified that following this verbal altercation, he had "no reason to think" that Barksdale would try to get back at him. R. 114-3 at 139.

On June 8 into June 9, Officer Perry was assigned to Tier 3F for the 11:00 PM to 7:00 AM shift. R. 118 ¶ 16. When Perry arrived, he had a brief conversation with the outgoing officer. R. 121 ¶ 13. In his deposition, Perry testified that although he does not remember what was said, he "knows for a fact" that he was not made aware of Clark and Barksdale's altercation because he would have documented the altercation if the outgoing officer had told him. R. 114-5 at 109.

Tier 3F is a dorm setting and the officer assigned to Tier 3F sits at a desk near the door of the tier where the officer monitors the tier. R. 121 ¶ 2. Between 11:30 PM and 12:14 AM, Perry left the desk five times: 11:30 (for one minute), 11:45 (for three minutes), 11:49 (for six minutes), 12:00 (for eight minutes), 12:10 (for four minutes). *Id.* ¶ 14. Perry testified that there are "relief officers" working on shift and that when Perry steps away from the desk, he always asks a relief officers to watch the tier for him. R. 114-5 at 30. The officers watch the tier from a nearby hallway, rather than from Perry's desk. *Id.* Perry testified that on the night in question, for each time he stepped away from his desk, the tier remained supervised, either by a nearby relief officer or because Perry was close enough to still see the tier. *Id.* at 62–63.

2

At 12:12 AM, Barksdale removed the arm of a wheelchair belonging to another inmate and placed it near his bed. R. 121 ¶ 16. At this time, Perry was not sitting at his desk at the tier. *Id.* ¶ 17. At 12:27 AM, Barksdale picked up the wheelchair arm and struck Clark in the head multiple times. *Id.* ¶ 18. Though Perry was sitting at his security desk at 12:27 AM, he did not see Barksdale strike Clark with the wheelchair arm. R. 118 ¶¶ 17–18. As a result of the strike, Clark sustained serious, life-threatening injuries. R. 121 ¶ 20.

## Discussion

### I. Failure to Protect Claim against Officer Perry

Clark claims that Officer Perry failed to protect him from harm because, when he stepped away from his desk, Perry left the tier unsupervised and thus gave Barksdale an opportunity to remove the arm of the wheelchair. R. 117 at 4–7. Because Clark was a pretrial detainee, his claim arises under the Due Process Clause of the Fourteenth Amendment. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022). To establish this claim, Clark must show the following elements:

> (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Echols v. Johnson*, 105 F.4th 973, 978 (7th Cir. 2024) (citations omitted). "The mere fact of detainee-on-detainee violence does not suffice to impose liability on a correctional officer." *Fields v. Guerrero*, 2024 WL 3250444, at *3 (N.D. Ill. July 1, 2024) (citing *Thomas v. Dart*, 39 F.4th 835, 842 (7th Cir. 2022) ("The unfortunate reality is that jails and prisons are dangerous places inhabited by violent people" and while correctional officers must act responsibly under the

3

circumstances, they are not required to "anticipate every potential danger facing a detainee"). The risk of harm must exceed the "baseline dangerousness of prison life." *Dawson v. Dart*, 2020 WL 1182659, at *2 (N.D. Ill. Mar. 12, 2020) (citations omitted). In other words, there must be "'a strong likelihood rather than a mere possibility that violence will occur' in order to impose liability." *Hamilton v. Gavin*, 2023 WL 2161663, at *5 (N.D. Ill. Feb. 22, 2023) (citing *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006)).

Additionally, the defendant officer must have been "on notice of a serious risk of harm." *Thomas*, 39 F.4th at 841 (citing *Westmoreland v. Butler County*, 29 F.4th 721, 730 (6th Cir. 2022) ("A pretrial detainee need not prove subjective elements about an officer's actual awareness of the level of risk, but he must prove the officer was more than merely negligent; the officer must have acted with reckless disregard in the face of an unjustifiably high risk of harm.")). A plaintiff must show that "a reasonable officer in a defendant's circumstances would have appreciated the high degree of risk the detainee was facing," and that the defendant disregarded those risks. *Id.* "[N]egligence is not enough." *Kemp*, 27 F.4th at 497.

Here, no reasonable jury could find that the evidence satisfies the required elements. Clark and Barksdale had a verbal altercation earlier in the evening that did not escalate into physical violence. Clark, himself, testified that following the altercation, he had "no reason to think" that Barksdale would try and get back at him. And the briefs submitted by Clark fail to identify other evidence beyond the altercation (such as a history of prior violence by Barksdale against other inmates) to suggest there was a looming threat to Clark following the altercation with Barksdale. *See* R. 117, R. 121. The evidence thus does not establish a "strong likelihood rather than a mere possibility" of violence that exceeds the "baseline dangerousness of prison life."

Additionally, Perry testified that although he does not remember what was said in his conversation with the outgoing officer, he "knows for a fact" he was not made aware of Clark and Barksdale's altercation because he would have documented the altercation if the outgoing officer had told him. Relying on Perry's testimony that Perry does not remember what was said in the conversation, Clark argues that the "Court must assume that Perry was told about [the] altercation." R. 117 at 5. Though courts draw reasonable inferences on summary judgment, Clark is asking the Court to speculate. Indeed, the proposed assumption is contrary to the only relevant evidence on the record—Perry's deposition, where Perry testified that he was not made aware of the altercation. There is also no evidence that Perry was aware of other issues (such as a history of prior violence) that would have raised concerns. Perry was thus not "on notice of a serious risk of harm."

Assume for the sake of argument, however, that Perry *was* on notice of the altercation. In such a case, the question becomes: what would a reasonable officer in Perry's shoes have done before leaving his desk? Clark emphasizes that Perry cannot recall which relief officer was watching the tier for each of the different times that Perry left the desk and thus extrapolates that Perry left the tier unmonitored. R. 121 ¶ 15. But the relevant evidence on whether the tier was monitored comes from Perry's deposition testimony, where Perry states that he asked a relief officer to watch the tier (even if Perry cannot remember the specific officer). The Court finds that a reasonable officer would have done exactly what Perry testified to doing—when stepping away from the desk, ask a relief officer to watch the tier.

Assume further, for the sake of argument, both that Perry was aware of the altercation and also that Perry stepped away without informing a relief officer. In such a case, the evidence would still be insufficient. Barksdale removed the arm of the wheelchair at 12:12 AM, when Perry had stepped away for four minutes. Just as Clark, himself, had "no reason to think" that Barksdale

5

would try and get back at him, a reasonable officer aware of the altercation would also have no reason to think that Barksdale would try and get back at Clark. Thus, a reasonable officer would not have appreciated a "high degree of risk" and the consequences of stepping away from the desk would not have been "obvious." Though stepping away may have been negligent, it would not rise to the level of an "intentional decision." And as stated above, negligence is not enough to prove a claim for failure to protect.

For these reasons, the motion for summary judgment is granted as to the failure to protect claim against Officer Perry.

## II. *Monell* Claim against Sheriff Dart

Clark claims that *Monell* liability arises from Dart's failure to implement a policy that barred wheelchairs from the Cook County Jail if inmates were able to dismantle those wheelchairs and use the component parts (such as armrests) as weapons. R. 117 at 11–15. Pursuant to *Monell*, "plaintiffs may sue municipalities under 42 U.S.C. § 1983 when their actions violate the Constitution." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020). As a threshold matter, Clark must demonstrate that the policy at issue violated a constitutional right. *Id.* Then, to establish a *Monell* claim, Clark must show the following elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the moving force behind the constitutional injury. *Id.*

Regarding the threshold issue, "[i]ncarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp*, 27 F.4th at 494. Clark sustained serious, life-threatening injuries while being detained at the Cook County Jail. The threshold issue is thus satisfied.

6

Regarding the first and second elements, *Monell* liability can arise from a failure to act. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020). In "situations that call for procedures, rules or regulations," and in "situations where rules or regulations are required to remedy a potentially dangerous practice," a municipality's "failure to make a policy is [] actionable." *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). A plaintiff "must show [that] policymakers knew of the deficiencies and failed to correct them, manifesting deliberate indifference." *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Deliberate indifference is "a high bar because it requires a showing of something approaching a total unconcern for the [plaintiff's] welfare in the face of serious risks." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (citations omitted). "Deliberate indifference goes beyond a failure to act – a municipality's conduct must rise to the level of criminal recklessness." *Harvey v. Dart*, 2023 WL 2561620, at *15 (N.D. Ill. Mar. 17, 2023) (citing *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021)). "Negligence or even gross negligence on the part of the municipality is not enough." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

Sabrina Rivero-Canchola works for the Cook County Sheriff's Office as the Americans with Disabilities Act ("ADA") compliance officer for the Cook County Jail and she provides feedback on policymaking for the Sheriff's Office when the policies are ADA related. R. 114-6 at 10, 15, 46. In 2015, Rivero-Canchola became aware that detainees were dismantling wheelchairs and using the armrests and leg rests to destroy property in the Jail. *Id.* at 34. As a result, she researched whether the Jail could obtain tamper-resistant wheelchairs where it was not possible for detainees to remove the armrests and leg rests. *Id.* She ultimately concluded that the Jail should continue using wheelchairs with removable armrests for two reasons. First, she identified a company that sold tamper-resistant wheelchairs and ordered the wheelchairs to test the product.

*Id.* at 35. She found that the product was flimsy and breakable. *Id.* Indeed, though the armrest was not removable, it was possible to break off the armrest, which created a sharp, jagged, plastic edge that could be used as a shank. *Id.* In effect, the tamper-resistant wheelchair may have been more dangerous. *See id.* Second, she spoke with the Jail's medical personnel who explained that certain detainees require wheelchairs with removable armrests because, given their physical disabilities, these detainees are unable to get in and out of the wheelchair unless the armrests are removable. *Id.* at 32–33. She then reviewed the Jail's legal obligations under the ADA and determined that the Jail was obligated to conduct an individualized assessment of each detainee's needs and to provide wheelchairs with removable armrests for detainees who need them. *Id.* at 36–37.

Following Rivero-Canchola's decision, between May 30, 2015 and June 9, 2019 (the date Clark was attacked), there have been sixteen documented incidents where a detainee used a portion of a wheelchair as weapon. R. 121 ¶ 21. When these incidents occurred, they would have been reported to an administrative officer or superintendent at the Cook County Jail. *Id.* ¶¶ 22–23. In her deposition, Rivero-Canchola was asked whether, since 2015, she had reconsidered her decision regarding the wheelchairs. R. 114-6 at 36. She stated that she had not reconsidered her decision because she was confident in her original conclusion. *Id.* She explained:

> I believe that the law requires us, like I said earlier, to weigh the risks and the benefits against the rights and needs of the inmates who are also patients who have medical needs. And although there are some incidents that happen where inmates use medical equipment, including the arms and leg rests of wheelchairs and canes and crutches and walkers and all types of medical equipment as weapons, they're a drop in the bucket compared to the overall incidents at the jail. . . . [But the] inmates [with disabilities] have the right to that medical equipment, and we cannot create more structural barriers for inmates with disabilities because those things could possibly be used as weapons in the future.

*Id.* at 39.

8

Far from deliberate indifference, the evidence shows that the Sheriff's Office was aware of the issue, researched the issue, tested different wheelchairs, considered its legal obligations with regard to detainees, and reached a well-thought-out conclusion that balanced the risks and benefits of using wheelchairs with removable armrests. Clark may disagree with that conclusion. But the Sheriff's Office was not deliberately indifferent. For this reason, the motion for summary judgment is granted as to the *Monell* claim against Sheriff Dart.

### III. Indemnification Claim against Cook County

Because the Court granted summary judgment on the underlying claims against Officer Perry and Sheriff Dart, the Court grants summary judgment on the indemnification claim as well. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (no indemnification without underlying liability).

### Conclusion

For the reasons stated above, Defendants' motion [113] for summary judgment is granted in full. Civil case terminated.

**SO ORDERED.**  **ENTERED: August 13, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**